IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MACHELLE HARRISON**,

        Plaintiff

        v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

        Defendant.

Civil No. 10-6120-MO

**OPINION AND ORDER**

**MOSMAN, J.,**

    Plaintiff Machelle Harrison ("Ms. Harrison") challenges the Commissioner's decision finding her not disabled and denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

    I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## BACKGROUND

Born in 1971, Ms. Harrison applied for DIB and SSI on August 26, 2003. AR 75, 494H.[1] Ms. Harrison alleges disability due to seizures, post-traumatic stress disorder, and migraines. AR 79. Her DIB application alleged disability beginning February 7, 2003 (AR 75), and her SSI application alleged disability beginning August 1, 2004. AR 494H. The Commissioner denied these applications initially and upon reconsideration. AR 232-53, 494A-G. An Administrative Law Judge ("ALJ") held a hearing on December 9, 2005 (AR 1224-59), and subsequently found Ms. Harrison not disabled on June 27, 2006. AR 497-505.

Ms. Harrison asked the Appeals Council to review this decision, and on November 20, 2007, the Appeals Council remanded the case back to the ALJ for a second hearing and decision. AR. 507-09. The ALJ held another hearing on March 12, 2009,[2] and on October 29, 2009, the ALJ found Ms. Harrison not disabled. AR 18-37. The Appeals Council denied review of the matter on March 15, 2010. AR 11.

## ANALYSIS

Ms. Harrison asserts that the ALJ improperly evaluated her credibility and the medical evidence, made erroneous step two findings, and erroneously found her not disabled at step five in the sequential proceedings. Ms. Harrison's credibility influenced the ALJ's subsequent findings, and is therefore addressed first.

---

[1] Citations "AR" refer to the indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on October 5, 2010 (Docket # 11).

[2] The hearing caption indicates that the hearing was held on "December 12, 2009," (AR 1260), but the hearing transcript itself indicates that it was held on March 29, 2009. AR 1292. The latter date is consistent with the ALJ's opinion.

**I.      Credibility**

The ALJ found Ms. Harrison's symptom testimony "not entirely credible." AR 33. The ALJ found Ms. Harrison's allegations of disability contradicted by her activities of daily living, and found her symptom testimony unsupported by the medical record. AR 32-33.

Ms. Harrison specifically asserts, without explanation, that the ALJ's credibility analysis "incorrectly" assessed the medical evidence pertaining to unspecified impairments, and that the ALJ should have recognized that her alleged somatoform disorder "indicates an involuntary, rather than voluntary, exaggeration of symptoms." Pl.'s Opening Br. 20. The Commissioner answers that the ALJ properly discredited Ms. Harrison's testimony. Def.'s Br. 6.

**A.      Credibility Standards**

The ALJ must consider all symptoms and pain which "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce the pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc)*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may

additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

B.  **Analysis**

1.  **Activities of Daily Living**

The Commissioner asserts that the ALJ's credibility analysis properly cited Ms. Harrison's activities of daily living, Def.'s Br. 6, which Ms. Harrison does not challenge. The ALJ discussed Ms. Harrison's activities of daily living, noting that she drives (despite her seizure medication), cares for her three children, shops, cleans, cooks, pays bills, and takes her children to school. AR 32. The ALJ may cite a claimant's activities of daily living in showing that the claimant's reported activities are inconsistent with her alleged limitations. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Ms. Harrison does not challenge this finding, and it is therefore affirmed.

2.  **Medical Evidence and Credibility**

Ms. Harrison asserts that the ALJ improperly cited the medical record in finding her not credible. She specifically alleges that the ALJ erroneously characterized her symptom testimony as "exaggeration." Pl.'s Opening Br. 19.

Ms. Harrison does not explain the manner in which the ALJ found she exaggerated symptoms, but cites the ALJ's findings at two pages in the record. *Id.* (citing AR 31-32). Ms. Harrison's indicated citations point to the ALJ's finding that the medical record did not support Ms. Harrison's report of carpal tunnel surgery, sobriety pertaining to methamphetamine use, hepatitis-C,

PAGE 4 - OPINION AND ORDER

and seizures related to stress. AR 32-33.

Ms. Harrison testified that a Dr. Tavakoli performed carpal tunnel surgery in December 2005 (AR 1270), and now asserts that evidence of such surgery was accepted by the Appeals Council. Pl.'s Reply Br. 2 (citing AR 508). The record before this court does not indicate that surgery was performed. The Appeals Council's November 30, 2007, Order instructs the ALJ to consider "reports" of December 2005 right carpal tunnel surgery. The Order does not state that surgical records were submitted, and is reasonably construed to refer to Ms. Harrison's hearing testimony. AR 508.

Ms. Harrison does not now identify evidence of surgical or medical records pertaining to her reported surgery, instead stating that the operative report "is not, for some reason, in the record . . . ." Pl.'s Reply Br. 3. Ms. Harrison makes no attempt to establish that the evidence was properly submitted. Ms. Harrison must provide evidence of her disability. 20 C.F.R. §§ 404.1512(a), (c); 416.912(a), (c). She presently fails to show that the ALJ erroneously found that the record did not contain evidence of carpal tunnel surgery. The ALJ's findings on this matter are affirmed.

The ALJ also noted that Ms. Harrison made contradictory reports regarding her methamphetamine abuse. AR 29. Ms. Harrison now acknowledges that she was not truthful in reporting her drug use to her mental health counselors. Pl.'s Opening Br. 19. Regardless of this stipulation, the record shows that the ALJ was correct in finding that the record contradicted Ms. Harrison's reports of sobriety to medical providers. Ms. Harrison told Dr. Belcher she had been clean since 1998. AR 556. However, Dr. Belcher concurrently noted that an April 2007 urinalysis was positive for methamphetamine. *Id.* The record supports Dr. Belcher's statement. AR 1082. The ALJ's finding that Ms. Harrison offered contradictory testimony to medical providers regarding

her sobriety is therefore affirmed.

The ALJ also noted that Ms. Harrison claimed she was diagnosed with hepatitis-C, and that the record did not support such a diagnosis. AR 33. The record before this court shows abnormal liver function test results, but no medical provider made a hepatis-C diagnosis. The ALJ's finding on this matter is based upon the record.

Finally, the ALJ noted that Ms. Harrison reported seizures as a response to stress, but that she did not report seizures while attending community college. AR 32. The ALJ found that "she testified that when she is going to school she did not find it stressful and in fact, she liked it." This reasoning fails to address the effect of stress upon seizures and is not sustained. With this exception, the ALJ's finding that the medical record contradicted Ms. Harrison's symptom testimony is based upon the record and is affirmed.

### 3.     Dr. Belcher's Opinion and Somatoform Disorder

Ms. Harrison also asserts that examining psychologist Dr. Belcher's opinion establishes that her "pain and discomfort is real," and that opinion establishes error in the ALJ's conclusion that she exaggerated her symptom testimony. Ms. Harrison concurrently asserts that the ALJ's credibility analysis incorrectly characterized her somatoform disorder. Pl.'s Opening Br. 19-20. Ms. Harrison does not identify any credibility finding the ALJ made regarding her alleged somatoform disorder. The ALJ found that Ms. Harrison did not meet Listing 12.07 regarding somatoform disorders at step three in the sequential proceedings, but did not otherwise discuss Ms. Harrison's alleged somatoform disorder. AR 31.

Dr. Belcher's August 13, 2008, clinical interview noted Ms. Harrison's lengthy medical history. AR 1079-1081. Dr. Belcher concluded, "This history of many physical and psychiatric

PAGE 6 - OPINION AND ORDER

complaints at an early age and without medical evidence to sustain them is indicative of a somatoform disorder." AR 1080-81. Dr. Belcher also stated that Ms. Harrison meets diagnostic criteria for somatoform disorder, and that "her calm, matter-of-fact manner is characteristic of someone with somatoform disorder. This problem will undoubtedly continue, as she is unwilling to believe physicians or test results and will continue to seek treatment, or she will simply construct complaints of different ailments." AR 1084. Dr. Belcher subsequently listed a somatoform disorder diagnosis. *Id.*

Ms. Harrison now asserts that the ALJ should have found that Dr. Belcher's somatoform disorder diagnosis "indicates an involuntary, rather than voluntary, exaggeration of symptoms." Pl.'s Opening Br. 19-20. The Commissioner does not address this argument. Ms. Harrison is correct in stating that the *Diagnostic and Statistical Manual* ("*DSM*") characterizes somatoform disorder as involuntary behavior. American Psychiatric Association, *DSM* 486 (4th ed. 2002). However, as noted above, the ALJ made no finding that Ms. Harrison's somatoform disorder impugned her credibility. This argument is therefore rejected.

### C.    Credibility Conclusion

This court may affirm an ALJ's overall credibility conclusion even when it does not uphold each of the ALJ's reasons for finding a claimant not credible. *Batson*, 359 F.3d at 1197. The ALJ's finding regarding the effect of stress on Ms. Harrison's alleged seizures is vague and is therefore rejected. The ALJ's remaining credibility determinations, and his conclusion regarding Ms. Harrison's symptom testimony are otherwise affirmed.

### II.    Medical Source Statements

Ms. Harrison asserts that the ALJ incorrectly evaluated the medical evidence pertaining to

PAGE 7 - OPINION AND ORDER

examining psychologist Paula Belcher, Ph.D., and her 2007 psychiatric hospitalization.

### A.      Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner.  20 C.F.R. § 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  But, if two medical source opinions conflict, an ALJ must only give "specific and legitimate reasons" for discrediting one opinion in favor of another.  *Id.* at 830.  The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B.      Analysis: Medical Source Statements

Ms. Harrison asserts that the ALJ improperly assessed the opinion of examining psychologist Dr. Belcher, and treating counselor Mandy Hull.  Pl.'s Opening Br. 16, 18.  Ms. Harrison also challenges the ALJ's findings addressing unspecified hospital physicians who treated Ms. Harrison in 2007.  Pl.'s Opening Br. 17.  The Commissioner asserts that the ALJ properly assessed Dr. Belcher's opinion, and does not address Ms. Harrison's remaining arguments.  Def.'s Br. 7-9.

#### 1.      Examining Psychologist Paula Belcher, Ph.D.

As noted, Dr. Belcher examined Ms. Harrison on August 13, 2008.  AR 1076-85.  Dr. Belcher conducted mental status testing and clinical interview, and diagnosed bipolar disorder, post-traumatic stress disorder, somatization disorder, alcohol dependence, amphetamine dependence in sustained full remission, nicotine dependence in sustained full remission, and noted "features of

borderline personality disorder." AR 1084. She noted no work-related limitations.

The ALJ exhaustively discussed Dr. Belcher's opinion. The ALJ first cited Dr. Belcher's opinion in her step two findings, noting that Dr. Belcher's review of Ms. Harrison's treatment record showed that Ms. Harrison took numerous medications during the period under review, including Vicodin, Flexeril, Carbatrol, Lunesta, and Toradol. AR 22. The ALJ also noted Dr. Belcher's report that Ms. Harrison's mental health treatment record showed a pattern of both missing appointments and making "crisis calls." AR 26. The ALJ's step two findings finally noted Dr. Belcher's observation that Ms. Harrison laughed and was relaxed at interview, and was cooperative, alert, oriented, and denied auditory hallucinations. AR 28. The ALJ also noted Dr. Belcher's report that Ms. Harrison stated that she had not left her bedroom in two years, except to use the bathroom, but that Ms. Harrison also concurrently reported preparing meals, shopping for groceries, and attending medical appointments. *Id.* Finally, the ALJ cited Dr. Belcher's statement that Ms. Harrison made inconsistent reports regarding her drinking and methamphetamine use, and that the medical record did not support Ms. Harrison's complaints of liver dysfunction and seizure. AR 29.

The ALJ also discussed Dr. Belcher's August 13, 2008, "Mental Residual Functional Capacity" report. AR 33-34. The ALJ accorded more weight to this form than a form submitted by Ms. Harrison's mental health counselors because the form was based upon Dr. Belcher's clinical observations and opinion. AR 34. Such analysis conforms with the ALJ's duty to accord more weight to medical source opinions based upon clinical findings, 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3); *Bayliss*, 427 F.3d at 1216, , and is therefore affirmed.

Ms. Harrison now asserts that the ALJ selectively read Dr. Belcher's opinion. Pl.'s Opening Br. 16-17. She specifically asserts that the ALJ should have addressed Dr. Belcher's somatoform

PAGE 9 - OPINION AND ORDER

disorder diagnosis, and an alleged inconsistency between Dr. Belcher's finding of "mild" impairment and a Global Assessment of Functioning ("GAF") score of 45. *Id.*

The ALJ may not selectively read the record, but the ALJ need not discuss evidence that is neither significant nor probative. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). Dr. Belcher assessed no work-related limitations pertaining to her somatoform disorder assessment. AR 1087. Ms. Harrison does not now point to any limitations Dr. Belcher assessed that should have been included in her RFC assessment. Any error regarding Dr. Belcher's somatoform disorder diagnosis is therefore insignificant.

In summary, Ms. Harrison fails to establish that the ALJ erroneously evaluated Dr. Belcher's opinion.

### 2. Mental Health Counselors

Ms. Harrison also asserts that the ALJ erroneously evaluated the opinion of her counselor Mandy Hull, QMHP ("Qualified Mental Health Professional"). Pl.'s Opening Br. 18-19. The ALJ twice discussed Ms. Hull's treatment records. AR 25-26, 34. The ALJ found that Ms. Hull's opinion omitted reference to Ms. Harrison's drug use (*id.*), and reflected only Ms. Harrison's anecdotal complaints. AR 25. The ALJ also found that Ms. Hull failed to provide a rationale for assigning Ms. Harrison a low GAF score. AR 26. Finally, the ALJ found that Ms. Harrison missed "too many" appointments and that her somatic complaints "clouded" mental health assessments. AR 29.

On February 25, 2009, Ms. Hull completed a questionnaire concerning Ms. Harrison's mental residual functional capacity. AR 1174-77. This questionnaire stated that Ms. Harrison was not significantly limited in her ability: to remember workplace locations and procedures; understand,

PAGE 10 - OPINION AND ORDER

remember, and carry out short, simple instructions; maintain concentration and attention for extended periods; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers and peers; respond appropriately to changes in a work setting; and be aware of normal hazards and precautions. AR 1175-76. Ms. Hull stated that Ms. Harrison was "moderately" limited in her ability to understand, remember, and carry out detailed instructions, work in coordination with others, interact appropriately with the general public, accept instructions from supervisors, maintain socially appropriate behavior, and set realistic goals. AR 1175-77. Finally, Ms. Hull stated that Ms. Harrison was "markedly" limited in her ability to perform activities within a schedule, maintain regular attendance, sustain a routine without supervision, and complete a normal workday or workweek without interruptions from psychologically based symptoms. *Id.* Ms. Hull stated that she had treated Ms. Harrison for three years. AR 1175-76.

Ms. Hull's February 25, 2009, questionnaire and concurrent report made no reference to Ms. Harrison's drug use. AR 1174-81. Ms. Hull's narrative discussed Ms. Harrison's reports of her symptoms, and stated that her diagnostic conclusions were based upon Ms. Harrison's report. AR 1180. The ALJ may reject physician opinions predicated upon reports of a claimant found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ's finding is therefore based upon the record and is affirmed.

Ms. Harrison now asserts that she missed appointments due to mental and physical conditions. Pl.'s Opening Br. 18. The record shows that Ms. Harrison failed to attend one appointment, on July 25, 2002, and cancelled same-day appointments on nine occasions. AR 147, 159, 1018, 1020, 1022, 1028, 1109, 1110, 1111, 1114, 1115. The ALJ was correct in finding that Ms. Harrison missed many appointments, although her characterization of these events as "too

PAGE 11 - OPINION AND ORDER

many" fails to account for the record, which reflects that Ms. Harrison provided at least some notice for these cancellations.

Finally, Ms. Harrison points to the ALJ's remark that Ms. Harrison's "exaggeration and 'constructing' of new impairments have clouded the opinions of the counselors and their ability to accurately determine the claimant's true functioning." Pl.'s Opening Br. 19 (citing AR 29). Ms. Harrison now asserts, without explanation, that "there is a medical basis for Plaintiff's conditions and it was error to find that Plaintiff had confabulated medical conditions in light of the objective medical evidence supporting her claim." *Id.* The Commissioner responds that Ms. Hull relied upon subjective allegations in reaching her conclusions. Def.'s Br. 13.

The ALJ did not explain her conclusion regarding the effect of Ms. Harrison's alleged exaggeration upon Ms. Hull's opinion, and did not explicitly state that Ms. Hull erroneously relied upon Ms. Harrison's unreliable reporting. However, this court may affirm inferences reasonably drawn from the record, *Batson*, 359 F.3d at 1193, and the ALJ may reject physician opinions predicated upon the testimony of a claimant appropriately found not credible. *Tonapetyan*, 242 F.3d at 1149. The ALJ's finding is therefore affirmed.

In summary, the ALJ properly evaluated Ms. Hull's opinion.

### 3. 2007 Hospitalization Records

Ms. Harrison also asserts that the ALJ improperly read her 2007 hospitalization records. Pl.'s Opening Br. 17. She specifically challenges the ALJ's finding that her hospitalization records improperly reflected her opiate use. *Id.*

The ALJ noted Ms. Harrison's April and May 2007 hospitalization following her report that she took five Vicodin tablets in a suicidal gesture. AR 27. The ALJ concurrently noted that

PAGE 12 - OPINION AND ORDER

urinalysis testing at this time was positive for methamphetamines. AR 28. The ALJ recited Ms. Harrison's diagnoses upon discharge on May 11, 2007, which were bipolar disorder, methamphetamine and alcohol abuse, and borderline personality disorder. AR 28. Finally, the ALJ noted that Ms. Harrison was discharged with a GAF of 50 "again with consideration of the claimant's non-credible alleged litany of numerous severe physical impairments which are not supported in the record." *Id.*

The record shows that Ms. Harrison was hospitalized following a Vicodin overdose between April 14, 2007, and May 11, 2007. AR 557. At discharge, Dr. Tavakoli diagnosed bipolar disorder, methamphetamine abuse, history of alcohol abuse, and a rule-out diagnosis of benzodiazepine abuse. AR 559. Dr. Tavakoli also assessed a GAF of 50, without any conditions. AR 559.

Ms. Harrison now asserts that the ALJ failed to recognize that her hospital records showed "chronic, prolonged narcotic pain medication, which can have adverse effects on mood and functioning." Pl.'s Opening Br. 17-18. Here she cites Dr. Tavakoli's discharge opinion, asserting that he was "well aware" of her medications. *Id.* Ms. Harrison's indicated citation shows a "rule out" diagnosis of benzodiazepine and opiate abuse but does not establish that the ALJ failed to consider the effect of narcotic pain medication upon her mood. AR 559. This submission is rejected.

Ms. Harrison also asserts that the ALJ erroneously considered her GAF at her May 11, 2007, hospital discharge. Pl.'s Opening Br. 17. The ALJ noted, "Her GAF was repeated at 50, again with consideration of the claimant's non-credible alleged litany of numerous severe physical impairments which are not supported in the record." AR 28 (citing AR 559). The meaning of this statement is unclear. The record does not show that Dr. Tavakoli, the discharging physician, included physical

PAGE 13 - OPINION AND ORDER

complaints in the GAF assessment. AR 559. The record only shows that Dr. Tavakoli noted Ms. Harrison's physical complaints in construing his "Axis III" findings, and concurrently assessed a GAF of 50 at "Axis V." *Id.* Because the ALJ neither accepted nor rejected the GAF score, with or without the concurrent Axis III findings, Ms. Harrison does not now establish that the ALJ erred in her analysis. This submission is rejected. The ALJ's findings regarding Ms. Harrison's May 2007 hospitalization discharge report are based upon the record.

### C. Conclusion: Medical Source Statements

In summary, Ms. Harrison fails to show that the ALJ erred in evaluating the medical evidence. The ALJ's findings are affirmed.

## III. The ALJ's Step Two Findings

### A. Step Two Standards

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive. *Id.* At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1509; 404.920(a)(4)(ii); 416.909; 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

Step two findings must be based upon medical evidence. 20 C.F.R. §§ 404.1520(a)(ii); 416.920(a)(ii). The Commissioner's regulations instruct that an impairment is "not severe" if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a); 416.921(a). The step two inquiry is a "threshold inquiry." *Bowen v. Yuckert*, 482

U.S. 137, 153 (1987). Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). The effect of this harmless error doctrine is tempered by additional requirements regarding a claimant's mental impairments. Recent jurisprudence instructs that an ALJ incorporate the analysis contained in the Commissioner's Psychiatric Review Technique Form ("PRTF") in his findings regarding mental impairments at steps two and three. *Keyser v. Comm'r Soc. Sec. Admin.*, __ F.3d __ (9th Cir. 2011) (available at 2011 WL 2138237 at * 4).

### B.   Analysis

Ms. Harrison challenges the ALJ's step two findings regarding her alleged seizures, carpal tunnel syndrome, cervical condition, hepatitis and fatty liver, and mental conditions. Pl.'s Opening Br. 14-16. Notably, Ms. Harrison does not explain the manner in which many of these conditions create work-related limitations pursuant to 20 C.F.R. §§ 404.1521(a) and 416.921(a). *Id.*, Pl.'s Reply Br. 1-6.

#### 1.   Seizures

The ALJ found Ms. Harrison's alleged seizure disorder non-severe. AR 21. The ALJ specifically noted that May 15, 1998 electroencephalogram (EEG) findings were normal, and that a subsequent EEG study in August 1998 showed "minimal left temporal slowing consistent for aphasic status of stuttering." Tr. 23. The ALJ also noted that neurologist Dr. Fitzgerald found no abnormalities upon examination on October 12, 1998, and that Dr. Fitzgerald believed Ms. Harrison's seizure symptoms to be "'more neuralgic' than epileptic." AR 23. The record supports this analysis. AR 138-39.

Further, Ms. Harrison states only that the alleged seizures "limited" her, and does not

presently explain any work-related limitations stemming from this alleged impairment. Pl.'s Opening Br. 13-14, Pl.'s Reply Br. 2. Ms. Harrison testified that she is tired the day following a seizure (AR 1233), but the ALJ appropriately rejected that testimony, as discussed above. For these reasons, the ALJ's findings regarding her alleged seizures at step two are affirmed.

### 2. Carpal Tunnel Syndrome

The ALJ found Ms. Harrison's carpal tunnel syndrome non-severe. AR 23. The ALJ noted that the record did not show that Ms. Harrison had carpal tunnel release surgery, and that Dr. Fitzgerald's report showed normal examination and nerve conduction studies, with subjective complaints of right hand and wrist pain. *Id.* The ALJ subsequently noted that on July 16, 2008, Dr. Lin repeated the nerve conduction studies, with normal results. *Id.*

The record supports these findings. AR 418-19. Further, Ms. Harrison again does not presently allege work-related limitations stemming from her alleged carpal tunnel syndrome. Pl.'s Opening Br. 14-15, Pl.'s Reply Br. 3. She testified, prior to this alleged surgery, that she could not "feel from when you do the double U [sic], [and she could not] feel from the insides." AR 1229-30. The effect of this alleged limitation on Ms. Harrison's workplace abilities, if any, is unclear. Therefore, the ALJ properly rejected Ms. Harrison's testimony regarding her alleged carpal tunnel syndrome. The ALJ's step two findings regarding Ms. Harrison's alleged carpal tunnel syndrome are affirmed.

### 3. Cervical Strain

The ALJ found Ms. Harrison's alleged cervical strain condition non-severe at step two. AR 21. Ms. Harrison again asserts that the ALJ erred, and asserts, without citation, that no medical opinion of limitation is required at step two. Pl.'s Opening Br. 15. Regarding work-related

PAGE 16 - OPINION AND ORDER

limitations, Ms. Harrison points to her own testimony that she experienced weakness in her grip. Pl.'s Reply Br. 3. As discussed, the ALJ properly found Ms. Harrison's symptom testimony not credible. This submission therefore fails.

### 4. Alleged Hepatitis and Liver Function Tests

The ALJ discussed Ms. Harrison's liver function test results. AR 22. The ALJ found that the record did not support Ms. Harrison's allegation of hepatitis C. *Id.* The record supports this finding.

The record shows that Ms. Harrison received abnormal liver function tests on several occasions in 2003, 2007, and 2008. AR 253, 425-29, 796, 971, 977, 983-84. These test results were negative for hepatis C on several occasions, although a January 18, 2008, liver biopsy report suggested a hepatis C diagnosis. Tr. 845. However, on February 25, 2008, treating physician Dr. Emery interpreted Ms. Harrison's various liver test results and diagnosed "steathohepatitis rather than chronic hepatis C effect." AR 959. Further, Ms. Harrison did not assert or testify as to any work-related limitations stemming from these test results. Pl.'s Opening Br. 15, Pl.'s Reply Br. 5. The ALJ's step two findings regarding these test results are therefore affirmed.

### 5. Mental Impairments

Finally, the ALJ discussed Ms. Harrison's mental impairments at step two. AR 24-29. This analysis encompasses five pages of her twenty-page decision. *Id.* The ALJ clearly articulated the contents of Ms. Harrison's PRTF form (AR 30), and found Ms. Harrison's somatoform disorder, depression, anxiety, and "features" of post-traumatic stress disorder severe. AR 21. Ms. Harrison now asserts that the ALJ should have found her bipolar and personality disorders severe. Pl.'s Opening Br. 15.

PAGE 17 - OPINION AND ORDER

The ALJ reviewed Ms. Harrison's extensive treatment records at Lane County Mental Health, encompassing the period between 1998 and 2002. AR 24. The ALJ also discussed the opinion of examining psychologists Allison Prescott, Ph.D and Sue Belcher, Ph.D., and records of Ms. Harrison's counseling treatment at Options Counseling Services between November 2003 and October 2004. AR 25-26, 28. Finally, the ALJ discussed Ms. Harrison's psychiatric hospitalizations in January 2006 and April 2007. AR 26-27.

The ALJ concluded that, while Dr. Belcher diagnosed bipolar disorder, Dr. Belcher did not find any difficulties in Ms. Harrison's ability to understand, remember, or carry out detailed instructions. AR 29. As noted, the record shows that Dr. Belcher specifically found that Ms. Harrison had no work related limitations, other than a mild impairment in her ability to make complex work-related decisions. AR 1087. Ms. Harrison now asserts that her counselor, Ms. Hull, assessed "marked" limitations on February 25, 2009, in conjunction with diagnoses of bipolar disorder and borderline personality disorder. Pl.'s Reply Br. 6.

The ALJ's analysis of Ms. Harrison's mental impairments at step two noted Ms. Hull's February 2009 opinion, but found it based upon Ms. Harrison's anecdotal complaints, without reference to Ms. Harrison's drug and alcohol use. AR 26. The ALJ may reject medical source opinions based upon reports of a claimant found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ properly rejected Ms. Hull's February 2009 opinion, which does not now establish that the ALJ erred in assessing Ms. Hull's mental impairments at step two.

The ALJ's step two findings regarding Ms. Harrison's mental impairments are therefore affirmed.

    **C.**    **Step Two Conclusion**

In summary, Ms. Harrison fails to establish reversible error at step two in the sequential proceedings.

## IV. The ALJ's Step Five Findings

Finally, Ms. Harrison asserts that the ALJ erred in finding her not disabled at step five in the sequential proceedings. Pl.'s Opening Br. 20.

At step five in the sequential proceedings, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. 20 C.F.R. §§ 404.1520(b)(2); 404.1566(e); 416.960(b)(2); 416.966(e). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

Ms. Harrison presently fails to establish that the ALJ erroneously omitted any work-related limitations from her assessment of Ms. Harrison's residual functional capacity, or in her subsequent questions to the vocational expert. The ALJ's step five findings are therefore affirmed.

## CONCLUSION

In conclusion, Ms. Harrison fails to show that the ALJ made reversible error in evaluating her credibility and the medical evidence, or in her step two and five findings. The ALJ's decision is based upon the record and the correct legal standards and is therefore AFFIRMED.

IT IS SO ORDERED.

Dated this   30th   day of June, 2011.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge